**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

---

**ELNORA PARHAM,**

        *Plaintiff,*

**v.**

**HSBC MORTGAGE CORPORATION**
**(USA),** *et al.,*

        *Defendants.*

**Civil Action No.: 3:09-cv-832-JRS**

---

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO DISMISS THIRD AMENDED COMPLAINT

COME NOW the Defendants, HSBC Mortgage Corporation (USA) ("HSBC") and Federal National Mortgage Association ("Fannie"), by counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submit their Memorandum of Law in Support of Motion to Dismiss Third Amended Complaint with their contemporaneously filed Motion to Dismiss Third Amended Complaint.

### INTRODUCTION

The Plaintiff, Elnora Parham, asserts a claim for rescission of her mortgage loan under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"). Plaintiff also claims she may recover statutory damages as well as attorney's fees. While Plaintiff acknowledges that she received TILA disclosures at closing, she nevertheless alleges that they were deficient because of the amount she was charged for a title search was "excessive."  This assertion forms the sole basis to rescind the loan.  More specifically, she alleges that she was charged a $400.00 fee which was not disclosed in the finance charge.  Plaintiff further alleges that such charge should

have been included in the TILA disclosures because it was allegedly "unreasonably inflated". (3rd Am. Compl. ¶ 13.)  After defaulting on the terms of the loan (*Id.* ¶ 17) and subsequent to the initiation of foreclosure proceedings, Plaintiff attempted to rescind the loan because the title search fee was "unreasonably inflated" (*Id.* ¶ 9) and, therefore, should have been included in the finance charge disclosure (*Id.* ¶¶ 12–13).

Based on these allegations, she asserts a (1) claim for statutory damages in the amount of $4,000.00, (2) rescission of the loan, (3) declaratory judgment that the foreclosure sale was void or voidable, (4) an order altering the timing of tender in order to obtain funds to complete tender; and (5) attorney's fees incurred.  Defendants contend that these facts fail to state a claim upon which relief can be granted.

## FACTUAL ALLEGATIONS[1]

On June 18, 2008, Plaintiff refinanced her house with HSBC. (3rd Am. Compl. ¶¶ 5–7.) On the same day, Plaintiff executed a note that was secured by a deed of trust in favor of HSBC. (*Id.* ¶ 8.)  She subsequently defaulted on the loan.  (*Id.* ¶ 17.)

Despite failing to keep up with her end of the bargain, Plaintiff now asserts that she was harmed at the time the transaction took place.  Accordingly, "[a]t the closing of the credit transaction, HSBC was required by TILA to provide Parham certain material disclosures as to the credit transaction." (*Id.* ¶ 11.)  Although HSBC did "provide[] to Parham certain documents which purported to (but did not) comply with those disclosure requirements[,]" HSBC nevertheless "failed to meet that obligation[.]"  (*Id.* ¶ 11.)  The specific failure, Plaintiff cites, is in regards to a $400.00 charge for a title search.  (*Id.* ¶ 13).  Indeed, Plaintiff's entire claim for rescission is based on the $250.00 difference between the title search cost and what Plaintiff

---

[1] Defendants assume, but do not concede, the veracity of the factual allegations contained Complaint solely for the purpose of lending support to its Motion to Dismiss Third Amended Complaint, in accordance with the standard of review as explicated below.

asserts is the "relevant (local) market charges for title examination fees for a residential loan comparable to the credit transaction[.]" (*Id.* ¶ 13.)

After Plaintiff materially breached her agreement with HSBC (*See id.* ¶ 17), "HSBC and/or Fannie instructed the substitute trustee to foreclose" on the Plaintiff's property. (*Id.* ¶ 19.) On December 8, 2009, the substitute trustee mailed a letter to Plaintiff notifying her of a foreclosure sale scheduled for January 4, 2010. (*Id.* ¶ 20.)  On December 18, 2009, Plaintiff mailed a letter (attached to and referred in Plaintiff's Second Amended Complaint as Exhibit A) a written notice of rescission that she contended rescinded the credit transaction.  (*Id.* ¶ 22). Plaintiff asserts that the $400.00 fee constituted a "hidden finance charge" because the prevailing market rate for such insurance was far less than $365.00. (*Id.* ¶ 13.)

## ARGUMENT

### A.   STANDARD OF REVIEW

A motion to dismiss tests the sufficiency of the allegations set forth in the complaint. Although legal conclusions can provide the framework of a complaint, the case must be dismissed if the complaint is unsupported by sufficient factual allegations. *Ashcroft v.Iqbal*, 129 S. Ct 1937, 1950 (2009).  Accordingly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," but, "when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n] –that the pleader is entitled to relief.'" *Id*.  Allegations are not entitled to a presumption of truth unless they are supported by well-pleaded facts.

A plaintiff hoping to survive a motion to dismiss must therefore set forth facts sufficient for a court to infer that "each element of a cause of action is present" before the case is allowed

to proceed. *Foster v. Wintergreen Real Estate Co.*, Case No. 3:08-CV-000031, 2008 U.S. Dist. LEXIS 90466, at *7-8 (W.D. Va. Nov. 6, 2008). After *Twombly* and *Iqbal*, plaintiffs are no longer free merely to parrot the elements of a cause of action. The allegations instead must contain more than just labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Giarratano v. Johnson*, 521 F.3d, 298, 304, 306 n.3 (4th Cir. 2008) (holding that *Twombly* establishes a regime that is "more favorable to dismissal of a complaint" at the earliest stages of a case than it was under the discarded *Conley* rule).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In applying *Iqbal*, this Court has noted that it "must initially distinguish between those factual allegations, which [it] must assume as true, and mere legal conclusions offered as factual assertions." *Boy Blue, Inc. v. Zomba Recording, LLC,* Case No. 3:09-CV-483, 2009 U.S. Dist. LEXIS 84988, at * 3-5 (E.D. Va Sept. 16, 2009). "After parsing the well-pleaded facts from legal conclusions, the court must then determine whether the [plaintiff's] factual allegations support a plausible claim for relief." *Id.* If after the extraneous allegations are disregarded, the "facts" are "merely consistent with a defendant's liability" no plausible claim has been stated. *Fisher v. Delta Airlines*, Case No. 3:09-CV-567, 2009 U.S. Dist. LEXIS 92737, at * 2-3 (E.D. Va. Oct. 5, 2009) (internal quotations omitted).

### B.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR RESCISSION

Plaintiff's claim for rescission fails for at least two distinct reasons. First, the "Notice of Rescission" fails to mention or even refer to a tender. The Third Amended Complaint is devoid of factual support for her ability to tender and all references contained therein are speculative at best and largely conditioned on future events that are implausible. Second, the grounds stated

for rescission, namely that the title search fee of $400.00 was unreasonably inflated, lacks any factual support in the Third Amended Complaint.  In short, Plaintiff fails to state a claim for rescission under TILA.

> 1. <u>Plaintiff's failure to make an offer of tender is fatal to any claim for rescission.</u>

Under *Shelton*, Plaintiff, who is seeking TILA rescission of a credit transaction secured by her primary residence, must allege facts that render plausible the conclusion that the TILA mandated disclosures were not made and that she has the ability to tender the proceeds of the loan to her creditor in return for the release of the security interest upon her property. *Am. Mort. Net., Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).  Plaintiff has failed to allege that she has tendered or has the ability to tender the borrowed funds back to the lender.  "The equitable goal of rescission under TILA is to restore the parties to the status quo." *Id* at 821.

Plaintiff bases her ability to tender on speculation and conjecture, not factual allegations sufficient to withstand a 12(b)(6) motion to dismiss. For instance, Plaintiff alleges:

> Parham is *not sure* of the exact amount she will be required to tender in TILA rescission.  However, the amount of tender she will be required to make will be less than $123,000 because the amount of the settlement charges (not including amounts for taxes and casualty insurance) exceeded $8,000, which will be deducted (for purposes of TILA rescission tender) from the principal of $138,250, as well as payments on the note which will she made which exceed $8,000.

(3rd Am. Compl. ¶ 29) (emphasis added).  The clear and unambiguous language of Plaintiff's own allegations make it clear that Plaintiff is not now, nor has ever been in a position to tender. At best, she might be able to tender. Furthermore, the Plaintiff's own allegations condition any ability to tender on future events, none of which have factual support. Her claim fails for this reason alone.

While Plaintiff alleges that she has "about $7,000.00" in bank accounts, (*Id.* ¶¶ 37–38), she also leaves no doubt that any remaining amount of tender will come from the sale of the property at issue.  (*Id.* ¶ 39.)   Plaintiff does not mention, as she did in her previous pleading (2nd Am. Compl. ¶ 29), refinancing as an option.   Even if this Court were to consider Plaintiff's mathematical calculations of projected earnings from a potential sale, Plaintiff will still fall short of tender in the amount of "less than $123,000" (3rd Am. Compl. ¶ 37).

Plaintiff's reference to tender is purely speculative, implausible, and is insufficient to demonstrate that she will be able to tender the amount necessary to effectuate rescission.  She has not alleged any facts other than the purported $7,000.00 in bank accounts that would demonstrate she could secure sufficient funds to meet any tender obligation or what basis she has to allege that she could reasonably obtain the funds.   The fact that Plaintiff is in default for failing to pay her mortgage makes it implausible that she could obtain refinancing.  Perhaps more importantly, Plaintiff's "notice of rescission," which is referenced in the 2nd Amended Complaint as "Exhibit "A," is devoid of any mention of tender, much less that she could or would tender the loan proceeds.

In *Nera v. Am. Home Mortg. Serv., Inc.*, 2009 U.S. Dist. LEXIS 68515, at *6 (N.D. Cal. Aug. 4, 2009), the court found that the plaintiff made an ineffective tender offer to support a claim for rescission under TILA.  In *Nera*, the plaintiff's attorney mailed a letter to the defendant stating that the plaintiff "would like to discuss tender arrangements for the amount due…once you have effected rescission." *Id.*  The court found that the plaintiff had failed to state a claim for rescission because she "d[id] not state . . . that they have tendered, or are able to tender the amount due in order to effectuate rescission." *Id.*  Plaintiff's "notice of rescission" attached as Exhibit "A" fails to make an offer of tender and in contrast to *Nera*, Plaintiff's "notice" does not

even contain or reference the word tender or any offer of tender. As such, Plaintiff has not stated a plausible claim for rescission under TILA.

In *Hudson v. Bank of America*[2], this Court addressed a factually similar case filed by Plaintiff's counsel which alleged almost identical facts. Therein, the Court found that Plaintiff did not meet his burden to establish a claim for rescission. *Hudson* at *9. The Court found that "Hudson failed to adequately support his averment that he can tender the funds necessary to complete rescission." *Id.* In so ruling, the Court cited several reasons that rendered Hudson's ability to tender speculative at best. The Court cited to Hudson's request for time to seek refinancing or a buyer for his residence as lack of support for his ability to tender. *Id.* The Court also cited to Hudson's allegations or intentions to use his "damages award" to make up the difference between the value of the home and the amount due to the lender was insufficient to support a plausible claim for rescission. *Id.* In further reasoning, the Court noted that Hudson's request that the Court determine the amount of tender further militated against Hudson's ability to tender. *Id* at * 10. Finally, this Court in *Hudson* found the absence of any allegations that the Plaintiff had "potential buyer or financiers" to support its dismissal of Hudson's claim for rescission. *Id.*

Here, Plaintiff made the same requests and the same allegations with regard to tender. For instance, Plaintiff alleges, "she *might* be able to obtain funds to tender the remaining amount due by her to the creditor . . . after credit for the statutory damages to which she is entitled . . . .." (3rd Am. Compl. ¶ 29) (emphasis added). Plaintiff then alleges that "[a]lthough [Plaintiff] has grounds to aver that she *might* be able to make such tender, *as a last resort*, she would sell the home…." *Id.* (emphasis added). Just like the allegations in *Hudson*, Plaintiff has failed to

---

[2] *Hudson v. Bank of America*, Case No. 3:09-CV-462-JRS; Memorandum Opinion issued by Chief Judge James R. Spencer [Dkt # 31]. Hereinafter, this Memorandum Opinion will be cited as *Hudson* * ___).

"mention … either prospective buyers or financiers" to support any such claim.  Plaintiff has amended her pleadings to state that she is simply "not sure of the exact amount she will be required to tender in TILA rescission."  (3rd Am. Compl. ¶ 36.)  Even on Plaintiff's fourth try, her allegations still fall well short of what is needed to survive a 12(b)(6) motion to dismiss under the plausibility standard annunciated in *Iqbal* and *Twombly*.

This Court, in *Carrington v. HSBC Bank USA, N.A.*[3], addressed a rescission claim, albeit with different factual scenarios from both *Hudson* and the case at bar, and found that some of Carrington's allegations withstood 12(b)(6) scrutiny.  *Carrington* * 14.  In *Carrington*, the Court found that Carrington's allegation that she "would be able to tender" the borrowed funds were sufficient as "the Court must consider the facts alleged in the Amended Complaint most favorable to Plaintiff." *Id.*  The Court distinguished the facts in *Carrington* from those in *Hudson* based on the fact that Carrington's claim was only a few months old while *Hudson's* claim was pending for over a year.  *Carrington* * 15.

In the case at bar, Plaintiff has alleged that funds from the sale of the house would satisfy tender amount.  However, there have been no facts plead that there has been any steps taken to market or sell the property.  Instead, she submits the tautological argument: "Parham will not need that $7,000 to make tender because she can make tender in TILA rescission solely from the proceeds of sale of the home."  (3rd Am. Compl. ¶ 37.)  She then states that she "cannot sell the home until this Court rules that she validly sent notice of rescission pursuant to TILA because Fannie Mae claims record title to the home by reason of the purported trustee's deed."  (*Id.*)  This is in contradiction to her previous allegation, where she admitted that she "cannot determine whether she will be able to obtain refinancing funds[.]" (3rd Am. Compl. ¶ 29.)  Plaintiff resorts

---

[3] *Carrington v. HSBC Bank USA, N.A.*,, Case No. 2:10-CV-208; Memorandum Opinion issued by Judge Raymond A. Jackson October 29, 2010.  Hereinafter, this Memorandum Opinion will be cited as *Carrington* * ___).

to surmising that the sale of the house, as a last resort, would satisfy any tender amount due. The foreclosure sale—having already occurred on January 4, 2010, well over one year ago—renders this argument inapplicable to the facts in *Carrington*. Finally, Plaintiff's suit has been pending since before January 4, 2010 (3rd Am. Compl. ¶ 25). This aligns the present case more closely with *Hudson* as opposed to *Carrington's* relatively short time frame.

The Court should follow the rationale set forth in *Hudson* when it stated: "Finally, given the context of the case and the Court's judicial experience, the Court cannot reasonably conclude that Hudson will be able to pay the as yet unknown amount due on the loan within a reasonable period of time following the resolution of this matter." *Id.* at * 10.

> 2. <u>The Plaintiff failed to plead facts sufficient to support his claim that the allegedly mischaracterized title search fee was not bona fide and reasonable and thus not a finance charge.</u>

Plaintiff merely restated the bare essential elements of a TILA claim, but fails to present sufficient factual matter, accepted as true, to render the legal conclusions and factual inferences supporting the elements plausible. *See Francis v. Giacomelli*, 588 F.3d 186 at 193 (4th Cir. 2009). Since the deficiency alleged is an undisclosed finance charge, (3rd Am. Compl. ¶¶ 11–13), and foreclosure proceedings have already commenced against the primary residence, (*Id.* ¶ 19), Plaintiff must show that the amount was greater than $35.00. (*Id.* ¶ 11). *Hudson* at *9. Since Plaintiff claims that a portion of the title search fee should have been included as a finance charge because it was not *bona fide* or reasonable, she must show that the services were not rendered in good faith, that the fees indirectly augmented the yield of the loan, or that they were not comparable to the prevailing practices of the industry in this locality. *Id.* (citing *Capparelli v. AmeriFirst Home Imp.*, 535 F. Supp.2d 554, 562; *Grigsby v. Thorp Consumer Discount Co.*, 119

B.R. 479, 488 (Bankr. E.D. Pa. 1990)).  Plaintiff has failed to meet this burden.  Indeed, even the Court in Carrington sustained the 12(b)(6) Motion to Dismiss on these grounds.  *Carrington* \* 9.

In the same fashion that the plaintiff in *Hudson* and *Carrington* failed to plead facts sufficient to support their claim, the Plaintiff here fails in likewise manner.  In *Hudson*, the plaintiff did not dispute that the title search was performed in return for $400.00.  *Hudson* at \*10.  Likewise, Plaintiff makes a naked assertion that the same services can be obtained for "far less" than $365.00. (3rd Am. Compl. ¶ 13).  As this Court correctly noted in *Hudson*, "[e]ven if the Court assumes the veracity of these allegations, these averments merely establish that Plaintiff paid more for title insurance than another borrower might have."  *Id.*  Plaintiff's allegations, even taken as true, merely note that Plaintiff may have paid more for a title search than another borrower might have.  In the absence of any allegations regarding the extent to which the lender augmented its return through the title search fee or more comprehensive allegations regarding the prevailing rates for title searches on properties similar to Plaintiff's, the 3rd Amended Complaint merely shows the possibility of non-compliance, but falls short of the requisite plausibility required by *Iqbal* and *Twombly*.  Since the Plaintiff has not alleged facts sufficient to render her conclusions regarding the unreasonableness of the title search fee plausible, her conclusion that the TILA disclosures omitted finance charges exceeding $35.00 is nothing more than a naked assertion unsupported by any factual allegations.

C.    <u>Plaintiff cannot state a claim for statutory damages against any assignee.</u>

Plaintiff alleges, in the alternative, that Fannie is the holder of the note by way of transfer or assignment.  (3rd Am. Compl. ¶ 8.)  Plaintiff asserts a claim for statutory damages for Defendant's alleged failure to "honor the notice of rescission."  (*Id.* ¶ 45.)  This claim fails

because a TILA violation must be "apparent on the face of the [TILA] disclosure statement" before an assignee may be held reliable for statutory damages.  15 U.S.C. § 16419(a).

Here, Plaintiff contends that there is a TILA violation because she was charged $35 more than the prevailing local market rate for title insurance.  (3rd Am. Compl. ¶ 13.)  "An assignee's sole duty under TILA is to examine the assigned documents for any irregularities or illegalities." *Irby-Greene v. M.O.R., Inc*., 79 F. Supp. 2d 630, 633 (E.D. Va. 2000.)  "Only violation that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA." *Taylor v. Quality Hyundai, Inc*., 150 F.3d 689, 694 (7th Cir. 1998).  TILA does not impose any duty of an additional inquiry on assignees. *Id*.; *see also Irby-Greene,* 79 F. Supp. 2d at 633 ("The relevant inquiry is whether a reasonable person can spot [any violations] on the face of the disclosure statement or other assigned documents.")

In *Murry v. America's Mortg. Banc, Inc.,* 2004 U.S. Dist. LEXIS 12818, at *11–14 (N.D. Ill. July 6, 2004), the federal district court granted a motion to dismiss a claim for statutory damages against an assignee.  The plaintiffs in *Murry* similarly contended they were overcharged for title insurance.  Specifically, they alleged they were charged approximately $1,600 for title insurance.  They also pleaded that another title insurer charged less than $500 for the same type of coverage in the area. *Id*. at *13.  The court held that, as a matter of law, these facts did not indicate a TILA violation because the assignee has no duty "to investigate the propriety of [the title insurance] price, let alone whether or not" a service was performed for the price charge. *Id*. Hence, there was no TILA violation on the face of the document because one would have to look outside the four corners of the disclosure to ascertain whether there was a TILA violation. *See e.g., Green v. Levis Motors, Inc*., 179 F. 3d 286, 295 (5th Cir. 1999) (holding that an assignee has

no duty to inquire beyond the face of the assigned documents); *Ellis v. GMAC*, 160 F. 3d 703,

709 (11th Cir. 1998) (holding that a plaintiff may not "resort to evidence or documents

extraneous to the disclosure statement" to determine assignee liability under TILA).

The holding of *Murry* comports with this Court's own understanding of Congress's

purpose for limiting claims against an assignee under TILA.  As Judge Ellis stated in *Irby-

Greene v. M.O.R., Inc.*, 79 F. Supp 2d 630, 637, n. 12 (E.D. Va. 2000):

> This limit on assignee liability is sensible, as a duty to inquire
> beyond the assigned documents would impede commerce, which
> depends upon the established practice of assigning commercial
> paper at a discount to financial institutions.  In general,  assignees
> are not in a position to know whether a given price was set in
> violation of TILA, as assignees often are not present at the
> transaction (which may have occurred much earlier than the
> assignment), do not participate in the negotiation, and may not be
> aware of a seller's mode of conducting business.

Here, Plaintiff premises statutory damages solely on the fact that Defendant has not

rescinded the loan based on his allegation that the amount charged for a title search exceeded the

governing market rate by more than $35, which constituted an undisclosed finance charge under

TILA.  (3rd Am. Compl. ¶¶ 12–13.) This attempt to recover statutory damages must be rejected.

"TILA does not permit an award of damages against an assignee for failure to honor a notice of

rescission."  *Dougal v. Saxon Mortg.* (*In re Dougal*), 395 B.R. 880, 891-892 (Bankr. W.D. Pa.

2008) (citing *Brodo v. Bankers Trust Co.*, 847 F. Supp. 353 (E.D. Pa. 1994) (holding no award

for statutory damages can be imposed against an assignee for failing to honor a rescission

notice);  *see also Walker v. Gateway Financial Corp.*, 286 F. Supp. 2d 965, 968 (N.D. Ill. 2003)

("Section 1641(a) specifically limits assignee liability to situations in which "the violation for

which such action or proceeding is brought is apparent on the face of the disclosure statement -

certainly not the case either as to the *overcharges for title insurance* or as to excessive recording

charges") (emphasis added); *Bills v. BNC Mortg.,* 502 F. Supp. 2d 773, 776-777 (N.D. Ill. 2007) (holding assignee could not be held liable for statutory damages for failing to comply with notice to rescind because underlying basis for requested rescission was alleged disclosure violation that was not apparent on face of disclosure statement); *accord Scott v. WFS Fin., Inc.,* 2007 U.S. Dist. LEXIS 3967, at *11 (E.D. Va. Jan. 18, 2007) ("Plaintiff cannot point to any TILA violations apparent on the fact of the documents…[defendant's] motion to dismiss the Plaintiff's TILA  claim against it is granted.")

Plaintiff alternatively avers that Fannie Mae is the holder of the note and, if such were the case, a "TILA violation was evident on the face of the documents received by Fannie Mae upon receipt of the papers associated with transfer of creditor rights to Fannie Mae" an assignee of the loan at issue in this case."  (3rd Am. Compl. ¶ 9.)  The Plaintiff's claim for statutory damages under TILA for any "failure to honor the notice of rescission" must be dismissed.  Because the face of the TILA disclosures would not reveal a TILA violation based on the amount of title search charged, Plaintiff has failed to state any claim in her Third Amended Complaint against Fannie Mae for statutory damages.

Alternatively, even if Plaintiff had alleged a TILA violation that could be deemed as present on the face of the disclosure statements, this is insufficient to assess statutory damages against an assignee under Fourth Circuit precedent.  In *Powers v. Sims & Levin*, 542 F. 2d 1216, 1221 (4th Cir. 1976), the appellate court held that "Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers."

Here, Plaintiff seeks to impose statutory damages against Defendants for failing to unilaterally terminate its security in the property based solely on a vague and indefinite rescission letter sent by Plaintiff.   *See Shelton*, 486 F. 3d at 819 (4th Cir. 2007) (affirming lower court's judgment denying rescission due to the plaintiff's inability to tender payment of the loan amount).   Specifically, Exhibit A of the 2nd Amended Complaint (rescission letter) and referred to in her 3rd Amended Complaint (3rd Am. Compl. ¶ 22) reveals that Plaintiff made no tender offer or otherwise presented any facts demonstrating her ability or intent to tender the loan proceeds.   This is a predicate for a proper rescission.   Defendant cannot be held liable for not granting a rescission when the Plaintiff's ability to tender is uncertain and speculative.

      D.     <u>Plaintiff's claim for attorney fees must be dismissed.</u>

Based on the Third Amended Complaint, Plaintiff cannot hold Defendants liable for any attorney's fees under TILA.   In *Brodo*., 847 F. Supp. at 359 the court held that "Congress did not wish to impose liability for damages and *attorney's fees* on an assignee who was not responsible for and who had no notice of TILA disclosure violations at the time of an assignment." (emphasis added).   Hence, the *Brodo* court found attorney's fees could not be awarded against an assignee if the violation did not appear on the face of the document.   *Brodo's* reasoning has been adopted by both state and federal courts interpreting TILA.   *See, e.g., Parker v. Potter*, 2008 U.S. Dist. LEXIS 111219, 1-2 (M.D. Fla. Oct. 22, 2008) (denying request for attorney's fees where loan found to be rescindable against assignee);   *Siner v. Am. Gen. Fin. Inc.,* 2004 U.S. Dist. LEXIS 12924, at *3–4 (E.D. Pa. July 8, 2004) (granting motion to dismiss claim for statutory damages and attorneys fees against assignee of loan); *Mayo v. Key Fin. Servs., Inc.,* 678 N.E. 2d 1311, 1314 (Mass. 1997) (finding attorney's fees unavailable against an assignee under TILA because § 1640(a) refers to creditors only).

The same facts that require dismissal of the plaintiff's statutory claims against those case's defendants also require dismissal of Plaintiff's claim for attorney's fees under TILA here.

**CONCLUSION**

WHEREFORE, the Plaintiff, Elnora Parham, fails to state a cause of action upon which relief can be granted, and as such, Defendants request that this court dismiss Plaintiff's Third Amended Complaint and award such other relief that this Court deems proper and just.

Respectfully submitted,

**HSBC MORTGAGE CORPORATION (USA) and FEDERAL NATIONAL MORTGAGE ASSOCIATION**

/s/Ronald J. Guillot, Jr.
Ronald J. Guillot, Jr., Esquire
Virginia State Bar No. 72153
SAMUEL I. WHITE, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, Virginia 23462
(757) 217-9304 (Office)
(757) 497-2802 (Facsimile)
rguillot@siwpc.com
*Counsel for the Defendants, HSBC Mortgage Corporation and Federal National Mortgage Association*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of February, 2011, I have electronically filed the

foregoing with the Clerk of Circuit Court using CM/ECF system, which will then send a copy to

the following party:

Henry W. McLaughlin, III
LAW OFFICE OF HENRY MCLAUGHLIN, P.C.
Eight and Main Building
707 East Main Street, Suite 1375
Richmond, Virginia 23219
*Counsel for the Plaintiff, Elnora Parham*

/s/Ronald J. Guillot, Jr.
Ronald J. Guillot, Jr., Esquire
Virginia State Bar No. 72153
SAMUEL I. WHITE, P.C.
5040 Corporate Woods Drive, Suite 120
Virginia Beach, Virginia 23462
(757) 217-9304 (Office)
(757) 497-2802 (Facsimile)
rguillot@siwpc.com
*Counsel for the Defendants, HSBC Mortgage*
*Corporation and Federal National Mortgage*
*Association*