IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ELNORA PARHAM,

    Plaintiff,

v.                                                   Case No. 3:09-CV-832-JAG

HSBC MORTGAGE CORPORATION

and

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the motion to dismiss filed by defendants HSBC Mortgage Corp. ("HSBC") and Federal National Mortgage Association ("Fannie Mae") (collectively, "Defendants"). In this case, the plaintiff, Elnora Parham ("Parham"), seeks to rescind a mortgage transaction under the federal Truth-in-Lending Act ("TILA") and recover statutory damages and attorney's fees. Defendants contend that Parham's basis to rescind the transaction fails to state a claim for rescission for two reasons: first, because Parham did not make an offer to tender as required under TILA and, second, because Parham failed to allege facts showing that the title search fee was unreasonable.

For the reasons stated below, the Court GRANTS Defendants' motion to dismiss. Further, in order to insure that Fannie Mae has clear title to the property, the Court ORDERS the plaintiff to release the *lis pendens* she placed on the property, if it is still in effect.

## I. Standard of Review

Because this matter comes before the Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court will apply the familiar standards in considering the allegations in the Third Amended Complaint. A motion to dismiss tests the sufficiency of a complaint; it does not resolve contested factual issues. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief, that is, the "plausibility of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 540 U.S. at 545, to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Although the Court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Matkari*, 7 F.3d at 1134; *see also Martin*, 980 F.2d at 952.

## II. Statement of Material Facts and Claim for Relief

Applying the standard discussed above, the Court has concluded that the following narrative represents the facts for purposes of resolving the motion to dismiss.

On or about June 18, 2008, Parham refinanced her home with HSBC as part of a "transaction" within the meaning of TILA. (3d Am. Compl. ¶¶ 5-7.) At the time Parham refinanced her home, she executed a note secured by a deed of trust in favor of HSBC. (*Id.* ¶ 8.) Either HSBC or Fannie Mae remains the holder of the note. (*Id.* ¶ 9.)

At the closing of the credit transaction, HSBC was required under TILA to provide Parham with certain material disclosures. (*Id.* ¶ 11.) The plaintiff alleges that HSBC failed to meet that obligation, because it did not disclose the entire finance charge. Because the finance charge was off by more than $35.00, the misstatement triggered TILA.[1] (*Id.* ¶ 13.)

According to the plaintiff, the finance charge disclosed in the credit transaction excluded a $400.00 title search fee. (*Id.*) HSBC was aware of the title search fee and approved it as item 1102 of the HUD-1 closing statement. (*Id.*) According to the plaintiff, the prevailing price of title searches in the relevant market was approximately $150 at the time of the transaction. (*Id.*) HSBC knew that no title insurance would be issued without a title examination. (*Id.* ¶ 16.) The plaintiff says that the excessive title search charge should have been disclosed as part of the finance charge.

---

[1] TILA is violated when the amount of a finance charge is under-disclosed by more than $35.00 in the case of a foreclosure. 12 C.F.R. § 226.23(h)(2)(i).

3

Parham eventually defaulted on the loan. (*Id.* ¶ 17.) After default, Parham attempted to rescind the loan due to the alleged TILA violation related to the amount of the title search fee. (*Id.* ¶¶ 13, 22.)

On October 21, 2009, HSBC appointed a substitute trustee under the deed of trust, who then foreclosed on Parham's home. (*Id.* ¶¶ 18-19.) On December 8, 2009, Parham received notice of the foreclosure sale that would be held on January 4, 2010. (*Id.* ¶ 20.) On December 18, 2009, Parham's counsel mailed HSBC a written notice of rescission that attempted to rescind the credit transaction. (*Id.* ¶ 22.) HSBC and Fannie Mae received notice of the rescission. (*Id.* ¶ 23.) Parham filed the original complaint in this case before January 4, 2010, and, prior to January 4, 2010, she filed a *lis pendens* as to the complaint. (*Id.* ¶ 25.)

HSBC assigned the note to Fannie Mae. (*Id.* ¶ 26.) Neither HSBC nor Fannie Mae took any action to cancel the foreclosure sale; as a result, the substitute trustee conducted the sale on January 4, 2010. (*Id.* ¶¶ 27-28.) Fannie Mae was the highest bidder at the sale; and the substitute trustee executed a trustee's deed to Fannie Mae that was recorded in the public land records. (*Id.* ¶¶ 29-30.) Parham attended the foreclosure sale and openly stated that this case had been filed. (*Id.* ¶ 29.) Parham tried to give a copy of the *lis pendens* to one of the substitute trustees prior to the foreclosure sale. (*Id.*)

After acquiring title to the property, Fannie Mae filed two unlawful detainer actions against Parham in the General District Court for the City of Richmond. (*Id.* ¶ 31.) The General District Court entered judgment for Fannie Mae in both cases. (*Id.* ¶ 32.) Parham timely and properly perfected an appeal to the Circuit Court of the City of Richmond demanding a trial by jury in both cases. (*Id.* ¶ 33.) Fannie Mae non-suited both cases, and Parham remains in the premises. (*Id.* ¶ 34.)

4

Parham admits that she lacks the cash to repay the loan and rescind the transaction. But, she maintains, the value of the home is approximately $170,000 based on an appraisal completed on November 22, 2010. (*Id.* ¶ 35.) Although the exact amount Parham will be required to tender in a TILA rescission is not known, Parham calculates that it will be less than $123,000. (*Id.* ¶ 36.) Thus, Parham asserts she can repay the principal of the loan (as required in a TILA rescission) solely from the proceeds of the sale of her home. (*Id.*) Obviously, Parham cannot sell the home until she is provided clear title following a rescission pursuant to TILA divesting Fannie Mae of title to the home. (*Id.*)

Parham requests the following relief: (1) a declaratory judgment that she validly rescinded the credit transaction and is entitled to enforcement of TILA rescission; (2) a declaratory judgment that the foreclosure sale held on January 4, 2010 was void or voidable; (3) a declaratory judgment that the trustee deed from the substitute trustee to Fannie Mae was void or voidable; (4) a declaratory judgment establishing the exact amount that she is required to tender in TILA rescission; (5) a judgment for statutory damages of $4000 against HSBC or Fannie Mae; (6) an award of attorneys' fees; and (7) a court order altering the timing of tender to allow Parham reasonable time to sell the house. (*Id.* ¶¶ 41-47.)

Defendants have filed a motion to dismiss the Third Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### III. Discussion

TILA attempts to level the playing field between lenders and borrowers. It fosters an informed use of credit by increasing the information available to consumers in credit transactions. *See* 15 U.S.C. § 1601(a). Much of the information comes in the form of disclosures of finance charges that work to raise the true interest rate on a loan. In addition,

TILA affords consumers a right to rescind certain consumer credit transactions in which the lender has taken a security interest in the borrower's primary residence. *See id.* § 1635(a). Ordinarily, consumers have three days to exercise the right to rescind the transaction. *Id.* This time is extended to three years after the transaction has occurred if the lender failed to provide the requisite material disclosures. *Id.* § 1635(f). The required material disclosures include, among other things, the annual percentage rate, the method of determining the finance charge, and the amount of the finance charge. *See id.* § 1639(a). TILA specifically exempts "fees or premiums for title examination, title insurance, or similar purposes" from the computation of the finance charge. *Id.* § 1605(e). Regulations specify that for these fees to be exempt, however, they must be "bona fide and reasonable in amount." 12 C.F.R. § 226.4(c)(7)(i).

To exercise the right of rescission after foreclosure proceedings have begun, the amount of the undisclosed finance charge must exceed $35. *Id.* § 1635(i)(2). To effect rescission, the borrower must notify the creditor of her right to do so. *See id.* § 1635(a). In the Fourth Circuit, this clause has been interpreted as requiring more than a stated intent to rescind:

> The natural reading of [TILA] is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made, the [borrowers] have only advanced a claim seeking rescission.

*Am. Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) (quoting *Large v Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)). In other words, her rescission is not effective unless Fannie Mae consents to it, or this Court rules that Parham is entitled to rescind.

The plaintiff argues that the title examination fee is not "bona fide and reasonable." She contends, therefore, that it should have been included in the finance charge (which it was not).

6

She therefore concludes that TILA has been violated, and she that she may rescind the loan.

The defendants request the Court to dismiss Parham's complaint because she has failed to state a claim for rescission under TILA. Defendants argue that Parham's claim fails because (1) the "Notice of Rescission" fails to mention or refer to a tender of the principal of the loan, a *sine qua non* of rescission, and (2) the allegation that the title search fee of $400 was unreasonably inflated lacks any factual support in the Third Amended Complaint. Defendants also assert that Parham cannot state a claim for statutory damages against an assignee and that attorneys' fees are not recoverable. The question about tender is close, but survives a motion to dismiss. As explained below, however, the Court finds that Parham's claim of the unreasonable title search fee lacks any factual support. Since the unreasonableness of the fee is the foundation for all the plaintiff's claims for relief, the Court will therefore dismiss the Third Amended Complaint.

*A. Whether Parham Failed to Make an Offer of Tender*

Parham seeks to rescind a credit transaction secured by her primary residence. Under TILA, to rescind a transaction under these circumstances, Parham must show not only that the TILA mandated disclosures were not made, but also that she has the ability to tender the proceeds of the loan to her creditor in return for the release of the security interest on her property. In other words, while the plaintiff can get out of the loan, she does not get to keep the principal amount of the loan. *See Shelton*, 486 F.3d at 820 ("[W]hen rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due" (citations omitted)).

The case law is split on the issue of tender in circumstances such as those present here, where the plaintiff needs to sell property in order to tender the loan payment. This is especially

7

true at the motion to dismiss stage of litigation. In *Moore v. Wells Fargo Bank*, 597 F. Supp. 2d 612, 616-17 (E.D. Va. 2009), this Court found that the plaintiff's assertion that she "can and will" tender the loan proceeds by refinancing or selling her home sufficient to survive a 12(b)(6) motion. The Court noted that it is improper for the Court to question the plaintiff's factual ability to tender at that stage. Similarly, in *Carrington v. HSBC Bank USA*, No. 2:10cv208, 2010 WL 5590761, at *7 (E.D. Va. Oct. 29, 2010), this Court emphasized that at the 12(b)(6) stage, the trial court "should not engage in a factual determination as to the plaintiff's actual ability to tender." In *Carrington*, the plaintiff stated that she would be able to tender the required amount through refinancing or through the sale of her home, and the Court found the plaintiff's assertions sufficient to survive a 12(b)(6) motion. Similarly, in *Little v. Bank of America*, No. 2:10cv311, 2011 WL 144911, at *8-10 (E.D. Va. Jan. 3, 2011), this Court found the plaintiff's assertions—that his home was worth more than the required tender and that he was ready to sell his home if need be—sufficient to survive a motion to dismiss. In *Rowe v. Bank of America*, No. 4:10cv092 (E.D. Va. Apr. 12, 2011), in an unpublished memorandum and opinion, this Court employed the same reasoning in denying a motion to dismiss.

Other cases, however, reach a different result. In *Cheche v. Wittstat Title & Escrow Co.*, 723 F. Supp. 2d 851, 858-59 (E.D. Va. 2010), the plaintiff fell into arrears on the mortgage payments on her primary residence and the trustee instituted foreclosure proceedings. The plaintiff alleged that she "might be able" to tender loan proceeds after she received credit for all payments previously made and any damages under TILA. This Court held her allegations insufficient to meet the plausibility standard required by *Twombly* and *Iqbal*, because the plaintiff did not sufficiently plead an ability to tender the loan proceeds. Similarly, in *Hudson v. Bank of America*, No. 3:09-CV-462, 2010 WL 2365588 (E.D. Va. June 11, 2010), *aff'd*, No. 10-

1795, 2011 WL 1897551 (4th Cir. May 19, 2011) (per curiam), the plaintiff argued that he could tender the funds necessary to complete the rescission provided that several conditions were met. The Court found that the plaintiff's ability to tender was "at best speculative." *Id.* at *5; *see also Wordell v. Fed. Nat'l Mortgage Ass'n*, No. CCB-10-1404, 2011 WL 1005041, at *2 (D. Md. March 11, 2011) (dismissing the plaintiff's claim for rescission because neither the complaint nor the briefs specified an ability or intent to repay the loan); *Moseley v. Countrywide Home Loans*, No. 7:09-CV-210-FL, 2010 WL 4481782, at *4 (E.D.N.C. Sept. 30, 2010) (dismissing a claim for rescission because the plaintiffs "concede[d] they are unable to repay the loans in question").

In this case, Parham had her house appraised at $170,000. (3d Am. Compl. ¶ 35.) Parham calculated that she will have to tender less than $123,000, although she is not sure how much. (*Id.* ¶ 36.) She stated she has $7000 in the bank now and that she can use the proceeds from the sale of her home to pay the amount due. (*Id.* ¶ 37.) Given the threshold set by *Moore*, the Court finds that Parham's assertions that the alleged sale will enable her to tender the proceeds probably demonstrates a "plausible" ability to tender, as required under *Iqbal* and *Twombly*. Thus, the Court finds that Parham has put forth a sufficient offer of tender to survive a motion to dismiss.

  *B. Whether Parham Failed to Allege Facts that the Title Search Fee Was Unreasonably Inflated*

Unfortunately for Parham, however, her claim of an excessive finance charge does not fare as well. Parham alleges that the defendants violated the disclosure requirements of TILA by failing to disclose, as part of the finance charge, the $400 title search fee. Parham claims that the rate in the relevant local market for a title search fee was $150. (*Id.* ¶ 13.) She says that this

9

price difference is not "bona fide and reasonable," and thus the fee should have been included as a part of the finance charge.

In *Hudson*, this Court explained how TILA regulates finance charges:

> The TILA regulates the relationship between lenders and borrowers in order to facilitate the "informed use of credit." To that end, the TILA requires lenders to disclose to borrowers "finance charges," or the costs of borrowing, which consist of "the sum of all charges . . . imposed directly or indirectly by the creditors as an incident to the extension of credit." The TILA specifically defines charges which may be deemed "finance charges," and specifically excludes "fees or premiums for title examination, title insurance, or similar purposes" where a credit transaction is secured by an interest in real property. However, the applicability of this exemption is conditioned on the title insurance fees being "bona fide and reasonable in amount." Although there is a scarcity of cases construing this particular provision, courts construing § 226.49(c)(7) have typically given the terms their "plain meaning" and looked to whether the services billed were "rendered in good faith," and whether the fees "indirectly augment[ed] the creditor's yield," or were comparable to the "prevailing practices of the industry in the locality."

*Hudson*, 2010 WL 2365588, at *3 (internal citations omitted). In short, title search fees are explicitly exempted from the definition of finance charges, *see* 15 U.S.C. § 1605(e), so long as they are "bona fide and reasonable in amount." 12 C.F.R. § 226.4(c)(7)(i).

To determine whether the title search fees are "bona fide and reasonable in amount," as the Court explained, courts have looked to whether the services were rendered in good faith, whether the fees indirectly augmented the yield of the loan, or whether the services were comparable to the prevailing practices of the industry in the locality. *Hudson*, 2010 WL 2365588, at *3; *see also Little*, 2011 WL 144911, at *7 ("A fee is reasonable where it is comparable to 'the prevailing practices of the industry in the locality.'" (citing *Hudson* in the context of an undisclosed notary fee)).

The first problem with the Third Amended Complaint is that Parham offers no factual support for her allegation that the local market rate was $150. Even if she is correct about the local rates, however, her allegation cannot save the day.

Parham fails to distinguish between differences in cost and unreasonable charges. Not all vendors charge the same amount for services, but differences in cost do not make charges unreasonable. This Court has addressed this issue in several cases. In *Hudson*, the plaintiff was charged $819 for title insurance when the prevailing local rate was less than $500. *Hudson*, 2010 WL 2365588, at *2. This Court held that, assuming those facts were true, they "merely establish[ed] that Hudson paid more for title insurance than another borrower might have" and "merely show[ed] the possibility of wrongdoing but do[] not nudge the claim from possible to plausible." *Id.* at *5. The Fourth Circuit affirmed *Hudson* in a per curiam opinion.

Similarly, in *King v. Deutsche Bank National Trust Co.*, No. 3:10cv41, 2010 WL 3745599 (E.D. Va. Sept. 21, 2010), the plaintiff alleged a TILA violation for an unreasonable title search charge. The plaintiff stated that she had an expert witness to testify that the local rate was approximately $100, which was $150 less than the title search fee she was charged. *See id.* at *5. The Court cited *Hudson* and ruled that the plaintiff's averments "insufficiently establish a plausible claim under TILA." *Id.* at *6; *see also House v. HSBC Finance Corp.*, No. 3:11-cv-90, 2011 WL 1883115, at *3-4 (E.D. Va. May 17, 2011) (finding that the plaintiff's claim that the $225 title examination fee was unreasonable when the local rate was not more than $150 "merely establishes that the Plaintiffs paid more for title examination than another borrower might have . . . 'but does not nudge the claim from possible to plausible'" (quoting *Hudson*, 2010 WL 2365588, at *8)); *Little*, 2011 WL 144911, at *8 (finding that the plaintiff's claim that the $250 notary fee was unreasonable when the local rate was less than $50 insufficient to survive a

11

12(b)(6) motion: "[S]uch conclusory allegations merely establish that Little might have paid more for the notarization service than another borrower might have, not that the fee was unreasonable" (citations omitted)).

The authority Parham cites to allow this claim to survive consists of an order issued in *Rodriguez v. GMAC Mortgage Corp.*, No. 3:07cv665 (E.D. Va. Oct. 10, 2008), and an order issued in *Curry v. Flagstar Bank*, No. 1:01-cv-1169 (E.D. Va. Apr. 1, 2011), in which this Court denied a motion for summary judgment and a motion to dismiss, respectively, in rulings from the bench. The Court finds these orders, which do not set forth the reasoning as to why the claims survived in these cases, to be unpersuasive in the matter at hand in the face of *Hudson*, *King*, and *Little*.

Thus, although the Court finds that Parham has alleged a sufficient offer of tender, her case suffers a fundamental flaw in that she has not pled facts to support her assertion that the undisclosed title search fee was unreasonable. Parham has set forth no other violations of TILA in the Third Amended Complaint, so the case must be dismissed.

### C. Statutory Damages Against an Assignee

The complaint suffers another defect as to Fannie Mae. Parham seeks $4000 in statutory damages against the defendants. Under 15 U.S.C. § 1641(a), a plaintiff may recover statutory damages if the TILA violation is apparent on the face of the disclosure statement. Parham does not contest that there are no TILA violations apparent on the face of the document; it appears that she concedes this point in her brief: "Although assignees, such as Fannie Mae, are only liable for statutory damages for TILA violations apparent on the face of the loan documents assigned, assignees are subject to the rescission right to the same extent as the original creditor."

(Pl.'s Opp'n Mem. 3 (citations omitted)). Thus, the Court GRANTS Defendants' motion to dismiss Parham's claim for statutory damages as against Fannie Mae on this ground as well.

## IV. Conclusion

The plaintiff alleges in her complaint that she has filed a *lis pendens* against the property. Since she has no valid reason to overturn the foreclosure, she will be ordered to release the *lis pendens*, if it is still active.

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss.

The Court will enter an appropriate order.

/s/ John A. Gibney, Jr.
United States District Judge

Date: June 15, 2011
Richmond, VA